# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| Amber Lancaster, Alana Campos, Cielo Jean Gibson, Dessie Mitcheson, Eva Pepaj, Jamie Edmondson Longoria, Jessica Hinton a/k/a Jessa Hinton, and Tiffany Toth Gray,<br><br>      Plaintiffs,<br><br> v.<br><br>Killer Creek Harley Davidson, Inc., d/b/a Killer Creek Harley-Davidson, and Dann Sullivan,<br><br>      Defendants. | Case No. |

Plaintiffs Amber Lancaster, Alana Campos, Cielo Jean Gibson; Dessie Mitcheson; Eva Pepaj; Jamie Edmondson Longoria; Jessica Hinton a/k/a Jessa Hinton; Tiffany Toth Gray (collectively, "Plaintiffs"), file this Complaint against Killer Creek Harley Davidson, Inc., d/b/a Killer Creek Harley-Davidson, and Dan Sullivan (collectively "Defendants"), and respectfully allege as follows:

## BACKGROUND

1. This is an action for damages and injunctive relief relating to Defendants' misappropriation, alteration, and unauthorized publication and use in advertising of images of Plaintiffs, each of whom are well-known professional

models, to promote their strip club, Killer Creek Harley-Davidson, located in Atlanta, Georgia ("Killer Creek Harley-Davidson," or the "Club").

2.      As detailed below, Defendants' misappropriation and unauthorized use of Plaintiffs' images, photos and likenesses (collectively, "Images") constitutes: a) violation of section 43 of the Lanham Act, 28 U.S.C. § 1125(a)(1), which prohibits both false or misleading representations of fact in commercial advertising and the false or misleading use of a person's image for commercial purposes; b) violation of each Plaintiff's common law right of publicity; c) violation of each Plaintiff's common law right of privacy; d) violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*;  e) defamation; and f) various common law torts, including conversion.

3.      In addition to the actual, compensatory, and exemplary damages set forth below, Plaintiffs likewise seek an Order from this Court permanently enjoining Defendants from using any of their Images in any way and through any medium.

## **JURISDICTION & VENUE**

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs have stated claims under the Lanham Act, 28 U.S.C. § 1125(a)(1).

5.      This Court has jurisdiction over the state law claims asserted, pursuant

to 28 U.S.C. § 1367.

6.      Plaintiffs are, and at all times relevant to this action have been, professional models who reside throughout the United States.

7.      According to publicly available records, Defendant Killer Creek Harley Davidson, Inc., is a corporation formed under the laws of the state of Georgia, with its principal place of business located at 11480 Alpharetta Highway, Roswell, Georgia 30076. Defendant Killer Creek Harley Davidson, Inc., operates Killer Creek Harley-Davidson, which is located at 11480 Alpharetta Highway, Roswell, Georgia 30076.

8.      Venue is proper in the United States District Court for the Northern District of Georgia because Defendants' principal place of business is located in Roswell, Georgia.

9.      A significant portion of the alleged causes of action arose and accrued in Roswell, Georgia, and the center of gravity for a significant portion of all relevant events alleged in this complaint is predominately located in Roswell, Georgia.

## **PARTIES**

### *Plaintiffs*

10.      Plaintiff Amber Lancaster ("Lancaster") is a well-known professional model, and a resident of Los Angeles County, California.

11.     Plaintiff Alana Campos a/k/a Alana Marie Souza ("Campos") is a well-known professional model, and a resident of Los Angeles County, California.

12.     Plaintiff Cielo Jean "CJ" Gibson ("Gibson") is a well-known professional model, and a resident of Los Angeles County, California and Hillsborough County, Florida.

13.     Plaintiff Dessie Mitcheson ("Mitcheson") is a well-known professional model, and a resident of Orange County, California.

14.     Plaintiff Eva Pepaj ("Pepaj") is a well-known professional model, and a resident of Los Angeles County, California.

15.     Plaintiff Jaime Edmondson Longoria ("Longoria") is a well-known professional model, and a resident of Maricopa County, Arizona.

16.     Plaintiff Jessica Hinton a/k/a Jessa Hinton ("Hinton") is a well-known professional model, and a resident of Los Angeles County, California.

17.     Plaintiff Tiffany Toth Gray ("Gray") is a well-known professional model, and a resident of Orange County, California.

***Defendants***

18.     Defendant Killer Creek Harley Davidson, Inc. ("KCHD"), is a domestic for-profit corporation formed under the laws of the state of Georgia and registered to conduct business in Georgia. At all times relevant to this action, Defendant KCHD operated Killer Creek Harley-Davidson in Roswell, Georgia.

19.     Service of process may be perfected upon Defendant KCHD by serving the registered agent for service of process, Dann Sullivan, who can be located at 11480 Alpharetta Highway, Roswell, Georgia, 30076.

20.     Defendant Dann Sullivan is listed as the CEO, CFO, and Secretary of Defendant IDK. Service of process may be perfected upon Defendant Sullivan by serving him at 11480 Alpharetta Highway, Roswell, Georgia, 30076, or anywhere else that he may be found in the state.

## FACTUAL ALLEGATIONS

21.     Each Plaintiff is a well-known professional model who earns her livelihood modeling and licensing her Images to companies, magazines and individuals for the purpose of advertising products and services.

22.     Plaintiffs' careers in the modeling industry place a high degree of value on their good will and reputation, which is critical to maximize their earning potential, book modeling contracts, and establish each of their individual brands. In furtherance of establishing, and maintaining, their brands, Plaintiffs are necessarily selective concerning the companies, and brands, for which they model.

23.     Each of the Plaintiffs' Images was misappropriated, and intentionally altered, by Defendants to make it appear that they worked at, endorsed, or were otherwise associated or affiliated with Defendants.

24.     In the case of each Plaintiff, this apparent claim was false.

25.     Moreover, this misappropriation occurred without any Plaintiff's knowledge, consent, or authorization.

26.     No Plaintiff has ever received any remuneration for Defendants' improper and illegal use of their Images, and Defendants' improper and illegal use of Plaintiffs' Images have caused each Plaintiff to suffer substantial monetary damages and harm to reputation.

27.     Further, in certain cases Defendants misappropriated Plaintiffs' advertising ideas because the Images they misappropriated came from Plaintiffs' own social media pages, which each Plaintiff uses to market to potential clients, grow their fan base, and build and maintain their brand.

***Plaintiffs' Individual Backgrounds and Careers***

28.     Plaintiff Lancaster joined The Price is Right in 2008. She was crowned Miss Washington Teen USA, and went to join the Sea Gals, the Seattle Seahawks famed cheerleading squad. Following five years on the squad, she moved to Los Angeles to pursue her entertainment career. In addition to her role on The Price is Right, Amber co-starred as Jenny Swanson on MTV's The Hard Times of RJ Berger. She has appeared on episodes of Days of Our Lives, CSI: Miami, The Bold and the Beautiful, Community, and Entourage. In addition, she has appeared as herself on Attack of the Show, The Scream Awards, and The Best Damn Sports Show Period. She also has appeared in the feature film Redline. Amber has been featured in

numerous magazine spreads and fashion features in Maxim, US Weekly, People, Stylewatch, Life & Style and Star. She has also been featured as part of Maxim's annual "Hot 100" list.

29.     That we know of, Lancaster is depicted in the photos in Exhibit "A" to promote Killer Creek Harley-Davidson on its Facebook page. This Image was intentionally altered to make it appear that Lancaster was either a stripper working at Killer Creek Harley-Davidson, that she endorsed Killer Creek Harley-Davidson, or that she was otherwise associated or affiliated with Killer Creek Harley-Davidson.

30.     Lancaster has never been employed at Killer Creek Harley-Davidson, has never been hired to endorse Killer Creek Harley-Davidson, has never been otherwise associated or affiliated with Killer Creek Harley-Davidson, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

31.     Plaintiff Campos is a Brazilian model who started working at the age of 15. Campos was scouted by the director of Ford Models, which remained her agency for five years. While she was nominated in numerous beauty pageants in her country, she decided to move to the United States at 20 and is currently represented by Wilhelmina Models. Campos has been published in *Playboy*, *Astonish*, *Viva Glam*, and *Bliss* magazines. She has also been in many campaigns

such as Arden B, Target, Chynna Dolls, Frederick's of Hollywood, ICollection, Elegant Moments, Drift Eyewear, Sexy Dresses, Sachika, Marisa Kenson, Sports Calendar, and appeared as a spokes model for My Body Journey and as a cover girl for *Arizona Foothills Magazine*. In addition, Campos was featured in the movie "Last Vegas" with Robert DeNiro, Morgan Freeman, and Michael Douglas.

32.    That we know of, Campos is depicted in the photo in Exhibit "B" to promote Killer Creek Harley-Davidson on its Facebook page. This Image was intentionally altered to make it appear that Campos was either a stripper working at Killer Creek Harley-Davidson, that she endorsed Killer Creek Harley-Davidson, or that she was otherwise associated or affiliated with Killer Creek Harley-Davidson.

33.    Campos has never been employed at Killer Creek Harley-Davidson, has never been hired to endorse Killer Creek Harley-Davidson, has never been otherwise associated or affiliated with Killer Creek Harley-Davidson, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

34.    Plaintiff Gibson is an American model who enjoys great success in her industry. Gibson was the *Import Tuner* magazine Model Search winner. Gibson is currently a model for the Falken Drift Team and can be seen at Formula Drift events. Gibson has also appeared in several magazines including *FHM*, *American Curves*, *Supreme*, *MuscleMag International, Muscle & Fitness,* and *Teeze,* Gibson

has also modeled for the world's largest PWC Engine Re manufacturer, Short Block Technologies, better known as SBT, Inc. in Clearwater, Florida. Gibson appeared in a home workout video called ENVY as a character named Eliana, which stands for the "E" in ENVY. Gibson continues to promote and market a number of different companies' sport and fitness equipment and is in the process of developing her own line of supplements and fitness clothing.

35.    That we know of, Gibson is depicted in the photos in Exhibit "C" to promote Killer Creek Harley-Davidson on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Gibson was either a stripper working at Killer Creek Harley-Davidson, that she endorsed Killer Creek Harley-Davidson, or that she was otherwise associated or affiliated with Killer Creek Harley-Davidson.

36.    Gibson has never been employed at Killer Creek Harley-Davidson, has never been hired to endorse Killer Creek Harley-Davidson, has never been otherwise associated or affiliated with Killer Creek Harley-Davidson, has received no remuneration for Defendants' unauthorized use of their Images, and have suffered, and will continue to suffer, damages as a result of same.

37.    Plaintiff Mitcheson competed for Miss Pennsylvania USA at eighteen and placed in the top ten. Shortly after, she became the face of Playboy Intimates, the face of MGM Grand Las Vegas, and Miss Pennsylvania Intercontinental.

Mitcheson entered *Maxim* magazine's annual "Hometown Hottie" contest along with thousands of models, she was crowned *Maxim* magazine's "Hometown Hottie". Later that year, Mitcheson was #100 on *Maxim's* "Hot 100" list. She has graced the pages of multiple issues of *Maxim*, including a three-page spread, two centerfolds, and the cover for the May 2014 "Navy" issue. Mitcheson was recently featured as the main Tecate Beer ring girl in the biggest Pay-per-View event in history, the Mayweather v. Pacquiao fight, which gave her worldwide visibility with over 100 million viewers. This triggered a huge demand for her modeling services. She has been featured by national advertisers such as Crest toothpaste, Tecate, Roma Costumes, and J. Valentine. Mitcheson currently has 406 thousand Instagram followers, over 22 thousand Facebook followers, and 13.9 thousand Twitter followers.

38.    That we know of, Mitcheson is depicted in the photos in Exhibit "D" to promote Killer Creek Harley-Davidson on its Facebook and Instagram pages. These Images were intentionally altered to make it appear that Mitcheson was either a stripper working at Killer Creek Harley-Davidson, that she endorsed Killer Creek Harley-Davidson, or that she was otherwise associated or affiliated with Killer Creek Harley-Davidson.

39.    Mitcheson has never been employed at Killer Creek Harley-Davidson, has never been hired to endorse Killer Creek Harley-Davidson, has never been

otherwise associated or affiliated with Killer Creek Harley-Davidson, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

40.     Plaintiff Pepaj is a professional model and actress who moved to Hollywood to pursue her career in 2004.  Her work includes high fashion runway modeling, print features, and film roles. Pepaj has appeared in films such as The Hand Off, Interior, Leather Bar and The Romp, and was a feature model in a national Diet Coke TV commercial campaign

41.     That we know of, Pepaj is depicted in the photos in Exhibit "E" to promote Killer Creek Harley-Davidson on its Facebook page. These Images were intentionally altered to make it appear that Pepaj was either a stripper working at Killer Creek Harley-Davidson, that she endorsed Killer Creek Harley-Davidson, or that she was otherwise associated or affiliated with Killer Creek Harley-Davidson.

42.     Pepaj has never been employed at Killer Creek Harley-Davidson, has never been hired to endorse Killer Creek Harley-Davidson, has never been otherwise associated or affiliated with Killer Creek Harley-Davidson, has received no remuneration for Defendants' unauthorized use of her Images, and has suffered, and will continue to suffer, damages as a result of same.

43.     Plaintiff Longoria comes from a family of police officers. She graduated from Florida Atlantic University with a degree in Criminal Justice in

2002. She worked the night shift as a police officer in Boca Raton, Florida for two years until quitting to become a cheerleader for the Miami Dolphins. Longoria and fellow Miami Dolphins cheerleader Cara Rosenthal were participants in the competitive reality TV series "The Amazing Race 14." Longoria was Playmate of the Month in the January 2010 issue of *Playboy*. She has been a sports blogger for Playboy online and co-host of Sirius Fantasy Sports Radio. She appeared on "The Bunny House" documentary, in the Trace Adkins video for "This Aint No Love Song," and numerous other television, print, radio, and online outlets. Longoria and her husband, MLB Superstar Evan Longoria have 2 children.

44.    That we know of, Longoria is depicted in the photos in Exhibit "F" to promote Killer Creek Harley-Davidson on its Facebook page. This Image was intentionally altered to make it appear that Longoria was either a stripper working at Killer Creek Harley-Davidson, that she endorsed Killer Creek Harley-Davidson, or that she was otherwise associated or affiliated with Killer Creek Harley-Davidson.

45.    Longoria has never been employed at Killer Creek Harley-Davidson, has never been hired to endorse Killer Creek Harley-Davidson, has never been otherwise associated or affiliated with Killer Creek Harley-Davidson, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

46.    Plaintiff Hinton was discovered by a talent manager at a wedding at

14. By 16 she locked in three national TV commercials and made guest appearances on *Baywatch* and *7th Heaven*. Hinton expanded her portfolio to include runway modeling and print campaigns at 18. In 2010, Hinton was the face of the *Palms Hotel & Casino's* ad campaign. She then pursued TV personality roles hosting for *Victory Poker*, and *Top Rank Boxing* interviewing the likes of Manny Pacquiao and Shane Mosley. In 2011, she was selected as *July's Playmate of the Month* becoming one of the most popular Playmates of that year. She was the center piece of an ad campaign for *Milwaukee's Best Beer* in conjunction with *Playboy Enterprises*. Hinton also attained spokesmodel roles for *Affliction Clothing*, *Enzo*, *Milano Hair Products*, *REVIV Wellness Spa*, and *Protein World*. She has ongoing modeling contracts with *Rhonda Shear Shapewear*, *Leg Avenue,* and *Roma Costume*, in addition to hosting a Los Angeles, CA television station *KTLA*. Her images have appeared on billboards, magazines, posters, and multiple forms of electronic media. Hinton has been a featured front cover model gaining attraction for magazines such as *FHM*, *Kandy*, *MMA Sports*, *Guitar World*, and *Muscle & Fitness*. She was named Creative Director for *MAJR Media* and was given part ownership for her role with the company. Hinton has successfully accomplished elite status as a social media celebrity with a combined total of over 4.2 million followers on Facebook, Instagram and Twitter.

47.    That we know of, Hinton is depicted in the photos in Exhibit "G" to

promote Killer Creek Harley-Davidson on its Facebook page. This Image was intentionally altered to make it appear that Hinton was either a stripper working at Killer Creek Harley-Davidson, that she endorsed Killer Creek Harley-Davidson, or that she was otherwise associated or affiliated with Killer Creek Harley-Davidson.

48.    Hinton has never been employed at Killer Creek Harley-Davidson, has never been hired to endorse Killer Creek Harley-Davidson, has never been otherwise associated or affiliated with Killer Creek Harley-Davidson, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

49.    Plaintiff Gray is an extremely successful model that takes great pride in holding the prestigious title of a *Playboy* Playmate. Toth was the *Playboy* "Cyber Girl of the Month" for May 2006. She then went on to pose for three pictorials under *Playboy's* Fresh Faces. Moreover, she has not only been featured in such magazines as *Super Street Bike*, *Import Tuner, Sport Truck, Iron Man, Seventeen*, and *Maxim*, but has also posed for various catalogs. Toth currently has over 3.7 million Facebook followers, 1.4 million Instagram followers, and over 305 thousand Twitter followers, and 1.08 thousand YouTube subscribers.

50.    That we know of, Gray is depicted in the photos in Exhibit "H" to promote Killer Creek Harley-Davidson on its Facebook page. This Image was intentionally altered to make it appear that Gray was either a stripper working at

Killer Creek Harley-Davidson, that she endorsed Killer Creek Harley-Davidson, or that she was otherwise associated or affiliated with Killer Creek Harley-Davidson.

51.     Gray has never been employed at Killer Creek Harley-Davidson, has never been hired to endorse Killer Creek Harley-Davidson, has never been otherwise associated or affiliated with Killer Creek Harley-Davidson, has received no remuneration for Defendants' unauthorized use of her Image, and has suffered, and will continue to suffer, damages as a result of same.

***Defendants' Business Activities and Misappropriation***

52.     Defendants operate or operated, during the relevant time period, Killer Creek Harley-Davidson, where they are or were engaged in the business of selling alcohol and food in an atmosphere where nude or semi-nude women entertain the business' clientele.

53.     In furtherance of its promotion their promotion of Killer Creek Harley-Davidson, Defendants own, operate, and control Killer Creek Harley-Davidson's social media accounts, including its Facebook, Twitter, and Instagram accounts.

54.     Defendants used Killer Creek Harley-Davidson's Facebook, Twitter, and Instagram accounts to promote Killer Creek Harley-Davidson, and to attract patrons.

55.     Defendants did this for their own commercial and financial benefit.

56.    Defendants have used, advertised, created, printed, and distributed the Images of Plaintiffs, as further described and identified above, to create the false impression with potential clientele that each Plaintiff either worked at Killer Creek Harley-Davidson, endorsed Killer Creek Harley-Davidson, or was otherwise associated or affiliated with Killer Creek Harley-Davidson.

57.    Defendants used Plaintiffs' Images and created the false impression with the public that Plaintiffs worked at or endorsed Killer Creek Harley-Davidson to receive certain benefits from that false impression, including but not limited to: monetary payments; increased promotional, advertising, marketing, and other public relations benefits; notoriety; publicity; and an increase in business revenue, profits, proceeds, and income.

58.    Defendants were well aware that none of the Plaintiffs have ever been affiliated with or employed by Killer Creek Harley-Davidson, and at no point have any of the Plaintiffs ever endorsed Killer Creek Harley-Davidson, or otherwise been affiliated or associated with Killer Creek Harley-Davidson.

59.    All of Defendants' activities, including their misappropriation and republication of Plaintiffs' Images, were done without the knowledge or consent of Plaintiffs.

60.    Defendant have never compensated Plaintiffs for the unauthorized use of Plaintiffs' Images.

- 16 -

61.     Plaintiffs have never received any benefit from Defendants' unauthorized use of their Images.

***Standard Business Practices in the Modeling Industry***

62.     It is common knowledge in the modeling industry that the hiring of a model for a commercial purpose involves a particularized methodology and process.

63.     The fee that a professional model, like each Plaintiff, will receive is negotiated by their agency, and involves consideration of, without limitation, at least the following factors: a) the reputation, earning capacity, experience, and demand of that particular model; b) where and how long the photo shoot takes place; c) where and how the images are going to be used by the client (*e.g.*, company website, social media, television commercials, billboards, or posters), known in the modeling industry as "usage"; and, d) the length of time the rights to use the photos will be assigned, known in the modeling industry at the "term."

64.     Most licenses to use a model's image are for one, two, or three year terms; almost never is there a "lifetime" term.

***Defendant's Misappropriation of Plaintiffs' Images***

65.     Defendants were aware that, by using Plaintiffs' Images, they were violating Plaintiffs' right to privacy, Plaintiffs' right of publicity, and creating a false impression to potential customers that Plaintiffs worked at or endorsed Killer

Creek Harley-Davidson.

66.     Unauthorized use of Plaintiffs' Images deprives them of income they are owed relating to the commercialization of their Images.

67.     In addition, Plaintiffs allege that the improper unauthorized use of their Images at issue in this case has substantially injured their respective careers and reputations, because of the negative connotations of false impression of association with Killer Creek Harley-Davidson.

68.     At no point was any Plaintiff ever contacted by any Defendants, or any representative of any Defendants, to request the use of any of Plaintiffs' Images.

69.     No Defendant ever obtained, either directly or indirectly, permission to use any of Plaintiffs' Images.

70.     No Defendant ever paid any Plaintiff for its use of her Images on any promotional materials, including Killer Creek Harley-Davidson's website, Twitter, Facebook, or Instagram accounts.

71.     Defendants used Plaintiffs' Images without their consent, and without providing remuneration, in order to permanently deprive each of the Plaintiffs of her right to use her Images.

<u>**FIRST CAUSE OF ACTION**</u>
**(Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B): False Advertising)**

72.    The advertisements at issue in this action were false and misleading under 15 U.S.C. § 1125(a)(1)(B) because no Plaintiff ever worked at or was in any way associated or affiliated with Killer Creek Harley-Davidson, nor had they agreed to appear in Defendants' advertisements for Killer Creek Harley-Davidson.

73.    Given the false and misleading nature of the advertisements, they had the capacity to and did deceive consumers.

74.    Upon information and belief, the deceptive advertisements had a material effect on the purchasing decisions of consumers who attended Killer Creek Harley-Davidson.

75.    Defendants' publication of these false and misleading advertisements on the internet had the capacity to and did affect interstate commerce.

76.    Even though Defendants were at all times aware that the Plaintiffs neither worked at nor endorsed Killer Creek Harley-Davidson, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiff's employment at or affiliation with Killer Creek Harley-Davidson.

77.    Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Killer Creek Harley-Davidson.

78.    Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' sponsorship of, employment at, or other relationship with Killer

Creek Harley-Davidson, and the goods and services provided by Killer Creek Harley-Davidson.

79.     Defendants' unauthorized use of Plaintiffs' Images created a false advertisement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION
### (Violation of § 43 of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A): False Association)

80.     Defendants' use of Plaintiffs Images created the false impression with the public that Plaintiffs were affiliated, connected, or associated with Killer Creek Harley-Davidson, or worked at, sponsored, or approved of Killer Creek Harley-Davidson's goods, services or commercial activities.

81.     This was done to promote and attract clientele to Killer Creek Harley-Davidson, and thereby generate revenue for the Defendants, for Defendants' commercial benefit.

82.     Even though Defendants were at all times aware that the Plaintiffs were neither affiliated, connected or associated with Killer Creek Harley-Davidson, nor worked at, sponsored, or approved of Killer Creek Harley-Davidson's goods, services or commercial activities, Defendants nevertheless used Plaintiffs Images to mislead potential customers as to Plaintiffs' employment at or

affiliation with Killer Creek Harley-Davidson.

83.     Defendants knew that their use of Plaintiffs' Images would cause consumer confusion as to Plaintiffs' sponsorship, affiliation, connection, association, or employment at Killer Creek Harley-Davidson.

84.     Defendants' use of Plaintiffs' Images caused consumer confusion as to Plaintiffs' employment at or endorsement of Killer Creek Harley-Davidson, and the goods and services provided by Killer Creek Harley-Davidson.

85.     Defendants' unauthorized use of Plaintiffs' Images created a false endorsement prohibited by section 43 of the Lanham Act, and Plaintiffs have been damaged in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

### THIRD CAUSE OF ACTION
**(Common Law Right of Publicity)**

86.     Defendants have appropriated each Plaintiff's likeness for Defendants' commercial purposes without authority or consent from Plaintiffs.

87.      Defendants misappropriated Plaintiffs' likenesses by publishing their Images on Killer Creek Harley-Davidson's website or related social media accounts as part of Defendants' advertising campaign.

88.     Killer Creek Harley-Davidson's website and social media accounts were designed to advertise and attract business to Killer Creek Harley-Davidson and generate revenue for Defendants.

89.    Plaintiffs are informed and believe and hereon allege that the manner in which Defendants posted and publicized their image and likeness in a manner that was hidden, inherently undiscoverable, or inherently unknowable, in that Defendants published their image and likeness on social media threads that, over time, are (for example, but not limited to) "pushed" down in time from immediate visibility.

90.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

91.    Plaintiffs are informed and believe and hereon allege that Defendants' republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

92.    Upon information and belief, Defendants use of Plaintiffs' Images did in fact attract clientele and generate business for Killer Creek Harley-Davidson.

93.    At no point did any Defendant ever seek or receive permission or consent to use any Plaintiff's Image for any purpose.

94.    Defendants were at all relevant times aware that they had never received any Plaintiffs' permission or consent to use their Images in any medium for any purpose.

95.     At no point did Defendants ever compensate Plaintiffs for its unauthorized use of their Images.

96.     Plaintiffs have been damaged in amounts to be proved at trial and are also entitled to punitive damages under O.C.G.A. § 51-12-5.1 based on Defendants' actions.

## FOURTH CAUSE OF ACTION
### (Common Law Right of Privacy – False Light)

97.     As set forth hereon, each Plaintiff has and had at the time of Defendants' misappropriation a commercial interest in her image, photo, persona, and likeness.

98.     This commercial interest was developed by each Plaintiff through her investment of time, effort and money in her career, image, persona, and likeness.

99.     As set forth herein, Defendants used each Plaintiff's image and likeness for commercial purposes by using same in Fox advertising.

100.    Defendants did so without any Plaintiff's consent, written or otherwise.

101.    Plaintiffs are further informed and believe and hereon allege that discovery will prove that Defendants' republicized Plaintiff's image and likeness on various occasions, via different mediums, after the initial date of the posting of their image and likeness and through the filing of this complaint.

102.    Plaintiffs are informed and believe and hereon allege that Defendants'

republication of Plaintiff's image and likeness was altered so as to reach a new audience and/or promote a different product.

103.   Defendants were at all relevant times aware that they never received any Plaintiffs' permission or consent to use their Images on any website or social media account, or on any other medium, in order to promote Killer Creek Harley-Davidson.

104.   At no point did Defendants ever compensate Plaintiffs for its use of their Images.

105.   No applicable privilege or authorization exists for Defendants' use of Plaintiffs' Images.

## FIFTH CAUSE OF ACTION
### (Violation of Georgia's Uniform Deceptive Trade Practices Act, O.C.G.A. § 10-1-370 *et seq.*)

106.   Defendants operated Killer Creek Harley-Davidson's website and social media accounts in order to promote Killer Creek Harley-Davidson, to attract clientele thereto, and to thereby generate revenue for Defendants.

107.   As such, Defendants' operation of the website and social media accounts, and their publication of Images thereon, was consumer-oriented in nature and occurred in the trade and commerce with the State of Georgia.

108.   Defendants' published Plaintiffs' Images on Killer Creek Harley-Davidson's website and social media accounts in order to create the false

impression that Plaintiffs were either strippers working at Killer Creek Harley-Davidson, endorsed Killer Creek Harley-Davidson, or were otherwise affiliated, associated, or connected with Killer Creek Harley-Davidson.

109.   As such, Defendants' intent in publishing Plaintiffs' Images was to mislead the public as to Plaintiffs' employment at and/or affiliation with the Club.

110.   Such conduct constitutes unfair and deceptive acts and practices, and unfair competition under O.C.G.A. § 10-1-372(a)(2), (3), and (12).

111.   Defendants' advertising practices offends the public policy of Georgia insofar as it constitutes misappropriation of Plaintiffs' property rights in their own Images, and invasion of Plaintiffs' privacy, for Defendants commercial benefit.

112.   Defendants' advertising practices are immoral, unethical, oppressive and unscrupulous insofar as they have sought to confuse the public for their own commercial benefit by implying that Plaintiffs are affiliated, endorse, are associated with and/or are strippers at Killer Creek Harley-Davidson.

113.   Defendants' advertising practices cause substantial injury to consumers by creating the false impression that Plaintiffs are strippers at, endorse, or are otherwise affiliated with, Killer Creek Harley-Davidson.

114.   There are no benefits to Defendants' advertising practices as set forth hereon except a benefit to Defendants own commercial interests.

115.   As a result of Defendants' unauthorized and misleading publication of

Plaintiffs' Images on Killer Creek Harley-Davidson's website and social media accounts, each of the Plaintiffs' reputations was injured, and each of the Plaintiffs' ability to market herself as a model was injured.

116.   As a result of Defendants' unauthorized and misleading use of Plaintiffs' Images, Plaintiffs have suffered damages in an amount to be determined at trial, including punitive and exemplary damages.

## SIXTH CAUSE OF ACTION
**(Defamation)**

117.   As detailed throughout this Complaint, Defendants have published altered Images of Plaintiffs in order to promote Killer Creek Harley-Davidson to the general public and potential clientele.

118.   Defendants' publication of the Images constitutes a representation that Plaintiffs was either employed by Killer Creek Harley-Davidson, that they endorsed Killer Creek Harley-Davidson, or that they had some affiliation with Killer Creek Harley-Davidson.

119.   None of these representations were true.

120.   In publishing Plaintiffs' altered Images, it was Defendants' intention to create a false impression to the general public that Plaintiffs were strippers working at Killer Creek Harley-Davidson or endorsed Killer Creek Harley-Davidson.

121.   Defendants were at least negligent in publishing Plaintiffs' Images

because they knew, or should have known, that Plaintiffs were not employed by Killer Creek Harley-Davidson, had no affiliation with Killer Creek Harley-Davidson, had not consented to the use of their Images, and had not been compensated for the use of their Images.

122.   In the alternative, Defendants published the Images of Plaintiffs with actual malice because they knew that Plaintiffs were not employed by Killer Creek Harley-Davidson, had no affiliation with Killer Creek Harley-Davidson, had not consented to the use of their Images, and had not been compensated for the use of their Images.

123.   Despite Defendants' knowledge and awareness of these facts, they nevertheless made the decision to publish Plaintiffs' Images to attract clientele and generate revenue for themselves.

124.   Defendants' publication of Plaintiffs' Images constitutes defamation under Georgia law because this publication falsely accuses Plaintiff of having acted in a manner—*i.e.*, working as a stripper and/or endorsing a strip club—which would subject each Plaintiff to hatred, shame, obloquy, contumely, odium, contempt, ridicule, aversion, ostracism, degradation, or disgrace, and/or could induce an evil opinion of Plaintiffs in the minds of right-thinking persons, and/or could deprive each Plaintiff of confidence and friendly intercourse in society.

125.   Defendants' publication of Plaintiffs' Images likewise constitutes

defamation *per se* under Georgia law because this publication would tend to injure each Plaintiff in her trade, business, and profession as a professional model.

126.   This is because any company or brand that sought to hire any of the Plaintiffs as a company or brand representative would be less likely to do so upon learning that she was a professional stripper and/or promoting as strip club, an inference which Defendants' publication of the Images support.

127.   Defendants' publication of Plaintiffs' Images likewise constitutes defamation *per se* under Georgia law because, insofar as this publication falsely portrays each of the Plaintiffs as a stripper, it imputes unchastity to her.

128.   Defendants' publication of Plaintiffs' Image' caused Plaintiffs to suffer damages in an amount to be determined at trial and are likewise entitled to punitive and exemplary damages.

## SEVENTH CAUSE OF ACTION
### (Negligence and *Respondeat Superior*)

129.   Plaintiffs are further informed and believe and hereon allege that Defendants maintain or should have maintained employee policies and procedures which govern the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes which specifically prevent the *unauthorized and non-consensual* use of intellectual property, publicity rights and/or the image and likeness of individuals for promotional and advertising purposes.

130.   Further, Defendants should have maintained, or failed to maintain, policies and procedures to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

131.   Defendants owed a duty of care to Plaintiffs to ensure that their advertising and promotional materials and practices did not infringe on their property and publicity rights.

132.   Defendants further owed a duty of care to consumers at large to ensure that their promotional and/or advertising materials and campaigns were not deceptive or misleading in their advertising practices.

133.   Defendants breached their duty of care to both Plaintiffs and consumers by failing to either adhere to or implement policies and procedures to ensure that the use of intellectual property, publicity rights, and/or the image and likeness of individuals for promotional and advertising purposes were not unauthorized, non-consensual, or false and deceptive.

134.   Defendants further failed to enforce or implement the above-stated policies and/or to communicate them to employees, and/or supervise its employees in order to ensure that these policies, along with federal and Georgia law, were not violated.  Defendants breached their duty of care to Plaintiffs and consumers by its negligent hiring, screening, retaining, supervising, and/or training of its employees

and agents.

135.   Defendants' breach was the proximate cause of the harm Plaintiffs suffered when their Images were published without their consent, authorization, and done so in a false, misleading and/or deceptive manner.

136.   As a result of Defendants' negligence, Plaintiffs have suffered damages in an amount to be determined at trial.

## EIGHTH CAUSE OF ACTION
### (Conversion)

137.   Each Plaintiff is, and at all relevant times were, the exclusive owners of all right, title and interest in their Images, and have property interests thereon.

138.   By the conduct detailed above, Defendants converted Plaintiffs' property rights in their Images for their own use and financial gain Images for its own use and financial gain.

139.   As a result of Defendants' unlawful conversion of Plaintiffs' Images, and publication of same, Plaintiffs have suffered damages in an amount to be determined at trial.

## NINTH CAUSE OF ACTION
### (Unjust Enrichment)

140.   As set forth in detail above, Defendants published Plaintiffs' Images in order to promote Killer Creek Harley-Davidson to the general public and potential clientele.

141.   Defendants' publication was for the purpose of creating a false impression to the general public that Plaintiffs were either strippers working at Killer Creek Harley-Davidson or endorsed Killer Creek Harley-Davidson.

142.   Defendants' purpose in publishing Plaintiffs' Images was to benefit commercially due to their purported association with, employment of, and/or endorsement by Plaintiffs.

143.   Upon information and belief, Defendants did in fact benefit commercially due to their unauthorized use of Plaintiffs' Images.

144.   Defendants have been enriched by their unauthorized control over, and publication of, Plaintiffs' Image because this publication has assisted Defendants in attracting clientele to Killer Creek Harley-Davidson.

145.   Plaintiffs have not been compensated for Defendants' commercial exploitation of their Images, and thus any financial benefit which Defendants received due to this exploitation is unjust.

146.   As such, Plaintiffs have been damaged in an amount to be determined at trial.

### TENTH CAUSE OF ACTION
**(Quantum Meruit)**

147.   Plaintiffs are each internationally known models who earn their livings appearing in, among other things, commercials, advertisements, and publications on behalf of companies and brands.

148.   Companies and brands that choose to hire Plaintiffs compensate them for their appearances.

149.   Although Defendants have availed themselves of the benefit of being associated with Plaintiffs, and making it appear to potential customers that Plaintiffs either work at Killer Creek Harley-Davidson, endorse Killer Creek Harley-Davidson, or are otherwise affiliated with Killer Creek Harley-Davidson, Defendant have not compensated Plaintiffs.

150.   Plaintiff is therefore entitled to reasonable compensation for Killer Creek Harley-Davidson's unauthorized use of their Images.

## **DEMAND FOR JURY TRIAL**

Plaintiffs demand a trial by jury.

## **PRAYER FOR RELIEF**

Plaintiffs respectfully request Judgment in their favor and against Defendants as follows:

(a) For actual damages, in an amount to be determined at trial, relating to Plaintiffs' first through tenth causes of action;

(b) For an order ***permanently enjoining*** Defendants from using Plaintiffs' Images to promote Killer Creek Harley-Davidson;

(c) For punitive damages and treble damages under O.C.G.A. §§ 51-12-5.1 and the Lanham Act, 15 U.S.C. § 1117;

(d) For all costs and attorneys' fees incurred by Plaintiffs in the prosecution of this Action pursuant to the Lanham Act, 15 U.S.C.§ 1117 and O.C.G.A. § 10-1-373; and,

(e) For such other and further relief as the Court may deem just and proper.

Under Local Rule 7.1D, I certify that this Complaint has been prepared using double-spaced Times New Roman at 14 point, unless otherwise permitted by Local Rule 5.1C.

Respectfully submitted this 5th day of October, 2021.

/s/ John V. Golaszewski

John V. Golazweski
NY Bar No. 4121091
*Pro Hac Vice Application Pending*
**THE CASAS LAW FIRM, P.C.**
1740 Broadway, 15th Floor
New York, New York 10019
(646) 872-3178
john@casaslawfirm.com

Lead Counsel for Plaintiffs

/s/ Bret Moore

Bret Moore
GA Bar No. 601608
**BROUGHTON LAW**
305 W. Wieuca Road NE
Atlanta, GA 30342
(404) 842-7700
(404) 842-7717 fax
bret@broughtonlaw.com

Local Counsel for Plaintiffs